UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT GARNER; dba KUSTOM KOLORS BOATWORKS, EX REL, *et al*, | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-0081 |
| NAUTILUS INSURANCE COMPANY, | § § § | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

This is a lawsuit regarding insurance coverage. The insured, Robert Garner d/b/a Kustom Kolors Boatworks ("Garner"), is suing his insurance company, Nautilus Insurance Company, alleging that Nautilus failed to defend and indemnify him after he was sued by an unsatisfied customer. Both Garner and Nautilus have filed cross-motions for summary judgment. For the reasons stated below, the Court **GRANTS** Garner's motion for summary judgment as to Nautilus' duty to defend, and **DENIES** Nautilus' motion for summary judgment.

**FACTUAL BACKGROUND**

**A. The Insurance Policy**

Nautilus issued an insurance policy with Commercial General Liability and Commercial Property coverages to Garner, acknowledging that the insured, "Robert Garner dba Kustom Kolors" was in the business of "Boat Repair and Servicing" at "8302 Brookside Road, Pearland, TX 77581." The policy period was from March 17, 2012

through March 17, 2013. The Commercial General Liability ("CGL") coverage was issued on standard ISO Form CG 00 01 12 04.

### 1. Promise of Coverage

Under the CGL part of Policy, Nautilus promised to pay "those sums that [Garner] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Further, Nautilus stated, "We will have the right and the duty to defend any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." The amount of coverage was limited to $2,000,000 for a general aggregate limit, with a $1,000,000 products completed operations hazard limit and a $1,000,000 each occurrence limit.

### 2. Exclusions from Coverage

As is common in CGL policies, the initial promise of coverage was then followed by broad exclusions, setting out types of claims or damages that would not be covered. Several of these are relied upon by the parties to this case.

The first exclusion is one relating to "Aircraft, Auto or Watercraft," stating that "[t]his insurance does not apply to: . . . 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft. Use includes operation and 'loading or unloading.' This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others, if the 'occurrence' which caused the . . . 'property damage' involved the ownership, maintenance, use or entrustment to others of any aircraft, 'auto'

or watercraft. This exclusion does not apply to: (1) A watercraft while ashore on premises you own or rent; or (2) . . . 'property damage' arising out of: (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of 'mobile equipment' if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or (b) the operation of any of the machinery listed in Paragraph f.(2) or f.(3) of the definition of 'mobile equipment' as follows: (i) cherry pickers and similar devises mounted on automobile or truck chassis and used to raise or lower workers; and (ii) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment."[1]

Similarly, Paragraph j, "Damage to Property" states that Nautilus will not cover "property damage to . . . (4) personal property in the care, custody or control of the insured . . . or (6) [t]hat particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it." But, this exclusion also then states that paragraph j(6) "does not apply to 'property damage' included in the products-completed operations hazard."

Another exclusion is Paragraph l, "Damage to Your Work." This paragraph states that the insurance will not apply to "'[p]roperty damage to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard. [But this]

---

[1] The original GCL exclusion for "Aircraft, Auto or Watercraft" was amended by an endorsement to the Policy, Endorsement L204 (06/06). This is the text as amended by the endorsement.

exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

Finally, an endorsement to the Policy added an additional exclusion, stating, "This insurance does not apply to 'property damage' to any watercraft which is stored or moored at your premises or is in your care, custody or control." Endorsement S 094 (06/06).

**3. Definitions**

In Section V, the policy then provides Definitions to be used when interpreting the promise of coverage and the exclusions. The relevant exclusions in this case are:

**a. "Products-completed Operations Hazard"**

"Products-completed operations hazard" is defined as: "a. Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession, or (2) Work that has not yet been completed or abandoned. . . ."

**b. "Property Damage"**

"Property damage" is defined as "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

### c. "Your Work"

The phrase "your work" is defined as "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." This definition "includes" both "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and (2) The providing of or failure to provide warnings or instructions."

## B. The Underlying Lawsuit and Nautilus' Denials of Coverage

Garner was sued on September 16, 2014 in Brazoria County, Texas, by Andrew Dykes. Dykes alleged that he brought his boat, a 22' Pathfinder, to Garner in April 2012 "for repairs to cracks in the fiberglass gel coat as well as repairs to other interior structural problems." According to Dykes, Garner "inspected the boat and made numerous representations that [he] could repair the boat to a 'like new' or 'repaired' condition." However, Dykes alleged that "the hull of the vessel was not returned to 'like new' or even a 'repaired' or seaworthy condition. The repairs were not completed as promised, and the hull of the vessel experienced significant cracks to the fiberglass gel-coat and water intrusion after routine use." Dykes alleged that he inquired whether Garner would "repair the hull," but Garner refused. Accordingly, Dykes sent the boat to Pathfinder's service center in Florida, and he was informed that "the hull in not in a repairable condition and is not repairable because of the work performed by [Garner]."

Dykes sued Garner for intentional and knowing violations of the Texas Deceptive Trade Practices Act, including breaching the "warranty of workmanlike performance

implied in all marine service contracts." Dykes also sued Garner for breach of contract. He alleged that Garner breached of an agreement "to repair the hull damage on the Boat to a 'like new' or repaired condition," and Garner failed to "bring[] the hull to a 'like new' or even repaired or seaworthy condition." Dykes alleges that this breach "resulted in damage to Plaintiff in that the poor repair has caused damage to Plaintiff's property and has resulted in the need to [send the boat to Florida to] completely replace the hull."

Garner informed Nautilus of the Dykes lawsuit, but Nautilus denied coverage on December 2, 2014. Nautilus' letter acknowledged notice of the Dykes lawsuit, but it informed Garner that Nautilus was denying coverage under the Policy, relying on the paragraph stating that certain "Aircraft, Auto or Watercraft" claims would not be covered. Nautilus' letter, however, mistakenly used the language of the standard form Policy, and it did not use the amended language that had been inserted into the Policy by Endorsement L204.[2]

On June 19, 2015, the state court entered summary judgment in favor of Dykes, awarding him $48,375.32 in damages.

C. The Present Litigation

On February 19, 2016, Garner[3] filed suit against Nautilus in state court in Galveston County, Texas, alleging that Nautilus breached its insurance policy by failing to defend and indemnify him. Garner also sought a declaratory judgment on whether the

---

[2] Garner refers to this as the "January 8, 2015" denial of coverage letter.
[3] The suit is brought in Garner's name, but it is being prosecuted by Dykes and his attorney because Garner assigned his right to sue Nautilus to Dykes. This suit is caption as being brought by both Garner and Dykes as Plaintiffs, but for purposes of clarity, the Court will refer only to "the Plaintiff," or "Garner" in this Memorandum and Opinion.

Dykes lawsuit was covered by the Policy, and he alleged that Nautilus violated Section 541 of the Texas Insurance Code by misrepresenting material facts regarding the Policy and refusing to provide coverage of the Dykes lawsuit. As damages Garner sought "attorney's fees, costs, and expenses associated with defending against claims . . . in the underlying case," and the amount of damages awarded to Dykes. Garner also sought treble damages under Texas Business & Commerce Code § 17.50(b)(1), as well as his attorney's fees from his suit against Nautilus. Nautilus answered by asserting a general denial under Texas law, as well as a long list of affirmative defenses.

Nautilus then removed the suit to this Court. Garner has filed a motion for summary judgment on his declaratory judgment cause of action, asking this Court to find that Nautilus owed him a defense in the underlying lawsuit. Dkt. 13. Nautilus has filed a motion seeking summary judgment in its favor on all of Garner's claims against it. Dkt. 18.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). On cross-motions for summary judgment, courts are to consider "each party's motion independently, viewing the evidence and inferences in the light most

favorable to the nonmoving party." *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 745 (5th Cir. 2009).

## APPLICABLE LAW

"Interpretation of an insurance contract is a question of law." *Tesoro Ref. & Mktg. Co., L.L.C. v. Nat'l Union Fire Ins. Co.*, 833 F.3d 470, 473 (5th Cir. 2016). The parties agree that Texas law applies to this dispute.

In Texas, "[t]he interpretation of an insurance policy, like other contracts, begins with the text, and requires that undefined words be given their plain, ordinary, and generally accepted meanings absent some indication of a different intent. An interpretation that gives each word meaning is preferable to one that renders one surplusage." *U.S. Metals, Inc. v. Liberty Mut. Group, Inc.,* 490 S.W.3d 20, 23–24 (Tex. 2015), reh'g denied (June 17, 2016). Under Texas law, an insured has the burden of establishing coverage under the terms of an insurance policy. G*ilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). If the insured proves coverage, then to avoid liability the insurer must prove that the loss is within an exclusion. *Id*. If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage. *Id*. Importantly, such exclusions "negate the insure[r]'s duty to defend only when all of the alleged injuries that fall into the coverage provision are subsumed under the exclusionary provision." *City of College Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 337 (5th Cir. 2013).

Finally, an insurer's duty to defend and its duty to indemnify are two distinct and separate duties. *McGinnes Indus. Maint. Corp. v. Phoenix Ins. Co.*, 477 S.W.3d 786, 803 (Tex. 2016). Because the duty to indemnify is independent from the duty to defend, an insurer may have a duty to indemnify even if a duty to defend never arises. *See D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009).

### A. Insurer's Duty to Defend

In determining whether an insurer has a duty to defend, courts follow the eight-corners rule. *Ewing Const. Co., Inc. v. Amerisure Ins. Co.,* 420 S.W.3d 30, 33 (Tex. 2014). "Under that rule, courts look to the facts alleged within the four corners of the pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy." *Id*. The court examines the factual allegations that give rise to the damages claims, not the legal conclusions or theories asserted. *Id*. The underlying pleadings are read liberally and any doubts about coverage must be resolved in favor of the insured— "[i]f any allegation in the complaint is even potentially covered by the policy then the insurer has a duty to defend its insured." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004); *see also Gore Design Completions Ltd. v. Hartford Fire Ins. Co.,* 538 F.3d 365, 369 (5th Cir. 2008) ("When in doubt, defend.").

Under this approach, "[f]acts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination ...." *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006)(applying Texas law); *see also GuideOne Elite Ins. Co. v.*

*Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308–09 (Tex. 2006) (quoting *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004)).

### B. Insurer's Duty to Indemnify

The duty to indemnify is triggered by the actual facts establishing the insured's liability in the underlying litigation, which may differ slightly from the alleged facts. *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 430 (5th Cir. 2016)(applying Texas law). Therefore, with one recognized exception, the duty to indemnify must be decided after a judgment has been entered in the underlying suit. *Id*. (citing *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)). The recognized exception applies when "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id*. (quoting *Griffin*, 955 S.W. 2d at 84).

To determine whether an insurer had a duty to indemnify, the court considering the coverage dispute will typically consider additional evidence needed to establish whether there was coverage in the underlying suit, particularly if the underlying case is resolved without a trial on the merits. *Bldg. Specialties, Inc. v. Liberty Mut. Fire Ins. Co.*, 712 F. Supp. 2d 628, 636 (S.D. Tex. 2010); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008) (holding that the trial court can consider evidence regarding facts required to determine coverage that were not adjudicated in the underlying litigation). The trial court is authorized to make factual findings necessary to resolve coverage. *Bldg Specialties*, 712 F. Supp. 2d at 636.

# ANALYSIS

Garner contends that he is entitled to partial summary judgment in his favor because Nautilus had a duty to defend him in the Dykes lawsuit. Nautilus has moved for summary judgment on all of Garner's claims, contending there is no coverage under the Policy and therefore neither a duty to defend nor a duty to indemnify Garner.

## A. Duty to Defend

### 1. Initial Coverage: Did the Dykes lawsuit allege "property damage" under the Policy, triggering the duty to defend?

First, the Court looks to the initial scope of coverage—Nautilus promised to defend suits, and to pay judgments and amounts Garner is required to pay, "because of . . . 'property damage' to which this insurance applies." So, did the Dykes lawsuit allege "property damage"? "Property damage" is defined in the Policy as "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

In his petition, Dykes alleged that he brought his boat to Garner "for repairs to cracks in the fiberglass gel coat as well as repairs to other interior structural problems," but that even after Garner performed some unspecified amount and types of "work" on the boat, "the hull of the vessel was not returned to 'like new' or even a 'repaired' or seaworthy condition." Instead, Dykes alleges that, "*after routine use*," "the hull of the vessel experienced significant cracks to the fiberglass gel-coat and water intrusion."

(emphasis added). When Dykes sent the boat to Pathfinder's service center in Florida, he was informed that "the hull in not in a repairable condition and is not repairable because of the work performed by [Garner]." Among his damages, Dykes sought the cost of sending the boat to the Pathfinder facility in Florida for a total replacement of the hull of the boat—"[Garner's] poor repair has caused damage to Plaintiff's property and has resulted in the need to completely replace the hull."

In other words, Dykes' allegations can be read as claiming: (1) he brought his boat to Garner for repairs to a particular area or areas of the boat's hull; (2) Garner performed some work on that area or areas; (3) Garner's work not only failed to repair the original issues, but it exacerbated them to the extent that, after routine use, more cracks and additional problems appeared; and (4) because of Garner's work, the entire hull of the boat had to be replaced, causing Dykes to suffer lost use and out of pocket costs. Nautilus disagrees, contending the Dykes' claims allege nothing more than a "re-appearance" of the original problem "in the exact locations [Garner] performed the hull repair." Dkt. 17, Nautilus' Reply in Support of its MSJ; Dkt. 18, Nautilus' Response to Plaintiff's MSJ. This reading is too restrictive in light the caselaw cited above.[4] Nautilus also contends

---

[4] As part of his petition, Dykes pled that he had sent Garner a demand letter—"[a]ttached as Exhibit A is a copy of the notice letter sent to defendant, which is incorporated by reference." However, none of the copies of the Dykes petition in the summary judgment record contain such a letter. Nautilus's Response to Garner's Motion for Summary Judgment, Dkt. 18, includes an Exhibit 1, which is a letter dated August 13, 2014 from Dykes' attorney to Garner. Nautilus points out that this demand letter alleges that, after Garner worked on the boat, "the hull of the vessel showed visible distress after routine use, including water intrusion in the exact locations [Garner] performed the hull repair." This letter is not file-stamped, and Nautilus did not seek to introduce Dyke's entire petition so that the Court could view the pleading as a whole to determine whether to include it under the "eight-corners" rule. The Court's analysis, however, is the same even if Dykes' statement that water intruded into the "exact locations" where Garner

that Dykes' pleading only asked for the replacement cost of the hull, and thus there are no "loss of use" allegations. Given the authorities cited above, as well as Texas' liberal pleading rules, after reviewing Dykes' request for replacement costs, consequential damages, "attorney fees and litigation costs," as well as "unliquidated damages within the jurisdictional limits of [the state] court," the Court disagrees.

The Court finds that, for purposes of the duty to defend, Dykes' allegations stated a claim for "property damage" within the initial scope of coverage.

### 2. Exclusions: Do any exclusions remove the Dykes lawsuit from the scope of coverage and relieve Nautilus of its duty to defend?

With an eye only to whether Nautilus had a duty to defend, Court now turns to the exclusions. Nautilus' motion for summary judgment contends that Paragraph j(4), Paragraph j(6), Paragraph l, and the amended watercraft exclusion exclusion preclude coverage.

#### a. Paragraph j(4): Damage to "personal property in the care, custody or control of the insured."

Under Texas law, a "care, custody or control" exclusion applies only to the "particular object of the insured's work, usually personalty, and to other property which [the insured] totally and physically manipulates." *Goswick v. Employers' Cas. Co.*, 440 S.W.2d 287, 289–90 (Tex. 1969). Where the property damaged is "merely incidental to the property upon which the work is being performed by the insured, it is not considered as in such 'care, custody or control' of the insured to be excluded under the policy." *Nat'l*

---

worked. The other allegations in the petition can be read to show that Garner's work resulted in the manufacturer stating that the entire hull needed to be replaced, and the duty to defend is therefore triggered.

*Fire Ins. Co. v. Entertainment Specialty Ins. Services, Inc.*, 485 F.Supp.2d 737, 743 (Tex. App.-Dallas, 1998); *see also Goswick*, 440 S.W.2d at 290 (Insured was hired to replace the pump of a well and the work required actual control of the rods and tubings of the well, but not the wall of the well. The Court found that the care, custody or control exclusion applied to the rods and tubing but not to the wall of the well).

Although this is a close call, the Court finds that the exclusion here does not apply under the Fifth Circuit's analysis of this language in *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 371 (5th Cir. 2008). In *Gore*, the Fifth Circuit examined whether the "care, custody or control" exclusion barred coverage in a duty to defend case where an electrical contractor is alleged to have installed an inflight entertainment/cabin management system on a Boeing 737 improperly, "miswired a component, damaging the Aircraft" and resulting in the loss of use and "substantial physical damage to the Aircraft's electrical system and to a vast array of electrical equipment installed on the Aircraft." The district court originally found that there was no duty to defend, but the Fifth Circuit reversed noting, "Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor." 538 F.3d at 370. Analyzing this exclusion the Fifth Circuit found that, "even if one could argue that the IFE/CMS system or electrical system generally was in Gore's 'control' during the work being performed, it does not follow that the entire Aircraft was." *Id*. In *Gore*, the Fifth Circuit looked to the allegations made in the underlying case, tracking them closely, and found there was simply not enough information to find that the exclusion applied. The same situation is found here.

### b. Paragraph j(6): Damage to property because of "your work"

Paragraph j(6) states that Nautilus will not cover "property damage to . . . [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." But, this exclusion also then states that it "does not apply to 'property damage' included in the products-completed operations hazard."

So, what is the "products-completed operations hazard?" It is defined as: "includ[ing] all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession, or (2) Work that has not yet been completed or abandoned. . . ."

Analyzing this language in other policies, the Fifth Circuit has held that the plain language of the exclusion "bars coverage only for property damage to parts of a property that were themselves the subject of defective work by the insured; the exclusion does not bar coverage for damage to parts of a property that were the subject of only nondefective work by the insured and were damaged as a result of defective work by the insured on other parts of the property." *Mid–Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 215 (5th Cir. 2009).

Nautilus relies upon *Southwest Tank and Treater Mfg. Co. v. Mid–Continent Cas. Co.*, 243 F.Supp.2d 597, 603–04 (E.D. Tex. 2003) (Davis, J.). However, that case is distinguishable from the instant case because, in that case, the insured was hired to work on the entire tank, which was a self-contained collective unit constituting a single item of property. Id. at 603. The insured in that case was hired to install tubes in the entire tank,

and while the insured chose to install the tubing in sections, this did not change the fact that the entire tank was being worked on by the insured. *Id*. In that case, the defendant was hired to work on the tank and the damages sought in the underlying suit were only for the replacement of the tank. Here, Garner was hired to repair certain parts of the boat's hull, but his work on those parts had a negative impact on the entire hull and required replacement of the hull as a whole. *See, e.g., Essex Ins. Co. v. McFadden*, 6:09-CV-193, 2010 WL 2246293, at *8 (E.D. Tex. June 3, 2010) ("Defendants were hired to work on the trough but the damages sought are for repair of not just the trough but other equipment as well.").

Again, the Court finds *Gore* instructive. Analyzing the contention that this language applied to bar coverage where a contractor allegedly installed electrical components of an airplane incorrectly, causing damage to the electrical system and the plane as a whole, the Fifth Circuit held that the exclusion was not as broad as the insurer believed—"If work on any part of a property would leave an insured exposed for damages to the entire property, the exclusion should state: 'Property damage to property that must be restored, repaired or replaced because your work was incorrectly performed on any part of it.' Even if Hartford's construction were reasonable, so is the construction that would exclude coverage for the damage to the IFE/CMS itself (or, perhaps, the electrical system) but not the rest of the Aircraft and the ensuing loss of use damages." 538 F.3d at 371. As in *Gore*, the allegations in the underlying suit here include more than just the part of the boat that Garner worked on—Dykes sought all consequential damages, including replacement of the entire hull, loss of use, and other damages.

### c. Paragraph 1: Damage to "your work"

Paragraph l, "Damage to Your Work," states that the insurance policy will not apply to "'[p]roperty damage to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard. [But this] exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." The Fifth Circuit has explained that this provision "generally excludes coverage for 'property damage' to the insured's completed work with one notable exception for work performed for the insured by a sub-contractor." *Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 211 (5th Cir. 2014)

Notably, although this exclusion precludes liability coverage for damages to the insured's defective work, it does not preclude coverage for damage to other property resulting from the defective work or product. *See, e.g., Wilshire Ins. Co. v. RJT Const., LLC*, 581 F.3d 222, 226 (5th Cir. 2009) (determining that language "precludes coverage for liability for repairing or replacing the insured's own defective work; it does not exclude coverage for damage to other property resulting from the defective work."). Here, Dykes alleged that the entire boat hull had to be replaced, *i.e.*, that Garner's work caused damage that beyond the scope of that work. *See, e.g., Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 221 (5th Cir. 2011) (describing three categories of property damage are potentially at issue in this case: (1) "property damage to the specific parts of Ergon's reactor upon which Cat Tech performed defective work;" (2) "property damage to those parts of the reactor upon which Cat Tech performed non-defective work, but were nonetheless damaged in the January or February 2005 incident;" and (3) "other

Ergon property, upon which Cat Tech did not work, but was nevertheless damaged" and concluding that the "your work" exclusion "only precludes coverage for damage to that portion of Ergon's property upon which Cat Tech performed repair services, defective or otherwise."); *see also Gore Design Completions, Ltd. v. Hartford Fire Ins. Co*., 538 F.3d 365, 371 (5th Cir. 2008).

### d. The Aircraft, Auto or Watercraft Exclusion (as Amended)

Nautilus also points to the amended watercraft exclusion, citing *State Farm v. Pan Am. Ins. Co.,* 437 S.W.2d 542 (Tex. 1969) and *Tucker v. Allstate*, 180 S.W.3d 880 (Tex. App.—Texarkana 2005, no pet.). Nautilus contends that this exclusion applies to bar coverage, and its duty to defend, because Dykes' complaint can be read to state that he is suing for property damage "arising out of the ownership, maintenance, use or entrustment to others of . . . [a] watercraft." Nautilus contends that Garner's "work" and "repair" on the boat can be viewed as "maintenance" and thus the exclusion applies.

However, the Court finds that Nautilus' argument fails upon a further reading. The paragraph also states, "This exclusion does not apply to: (1) A watercraft while ashore on premises you own or rent . . .".

If the property damage at issue arises out of the "maintenance" by Garner, then it occurred at the time of the maintenance—per the definition in the Policy. There is no allegation in Dykes' pleading that the "maintenance," assuming arguendo the word applies here, was performed anywhere else except Garner's premises in Pearland, Texas. Accordingly, under the authorities cited above, particularly *Gore*, the Court finds that this exclusion does not apply to excuse Nautilus from its duty to defend.

### B. Duty to Indemnify

Having found that Nautilus had a duty to defend Garner in the Dykes lawsuit, the Court declines to go any further at this stage. Nautilus contends that it is also entitled to summary judgment in its favor as to whether it had a duty to indemnify, and it correctly points out that the analysis of a duty to indemnify is less favorable to the insured. However, the Court finds that summary judgment is not appropriate on the record before it. As Judge Rosenthal noted in *Building Specialties*, "the court considering the coverage dispute will typically consider additional evidence needed to establish whether there was coverage in the underlying suit, particularly if the underlying case is resolved without a trial on the merits." *Bldg. Specialties, Inc. v. Liberty Mut. Fire Ins. Co.*, 712 F. Supp. 2d 628, 636 (S.D. Tex. 2010); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008) (holding that the trial court can consider evidence regarding facts required to determine coverage that were not adjudicated in the underlying litigation). The trial court is authorized to make factual findings necessary to resolve coverage. *Bldg Specialties*, 712 F. Supp. 2d at 636.

The record is not developed enough to allow this Court to find that Nautilus has carried its burden of showing there is no genuine dispute of material fact as to whether it has a duty to indemnify Garner for the Dykes lawsuit.

Accordingly, the Court DENIES Nautilus' motion for summary judgment on its duty to indemnify, without prejudice to re-urging.

SIGNED at Galveston, Texas, this 27th day of March, 2017.

_George C. Hanks Jr._
George C. Hanks Jr.
United States District Judge